UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LEE CONRAD GOODMAN,

    Petitioner,

    v.

RICHARD MORGAN,

    Respondent.

Case No. C05-5259RBL

REPORT AND RECOMMENDATION

**NOTED FOR:**
**April 28th, 2006**

    This 28 U.S.C. § 2254 petition for habeas corpus relief has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 (b) and local Rules MJR 3 and 4.  Petitioner in this action is seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  Petitioner was allowed to amended the petition and add a tenth ground for review.  (Dkt. # 24).  Respondent has answered both the original petition and the additional ground.  (Dkt. # 31).  Petitioner has replied.  (Dkt. # 34).  This matter is now ripe for review.

## FACTS

    Petitioner challenges his convictions by guilty plea for arson in the first degree, residential burglary, violation of a protection order, and willfully killing a pet animal-domestic violence.  (Dkt. #

REPORT AND RECOMMENDATION- 1

32, Exhibit 1). He was sentenced in Pierce County Superior Court in 2000. He received an exceptional sentence of 360 months. (Dkt. # 32, Exhibit 1). The Washington State Court of Appeals summarized the facts:

> Lee Goodman and his wife, Christine, met in 1979. Shortly thereafter, Goodman began serving a prison sentence for manslaughter. Goodman had killed a real estate agent whom he called out to his house when his former wife left him. The State charged Goodman with first degree murder, but he pleaded guilty to first degree manslaughter. When he got out of prison in 1985, he and Christine began living together, and they married in 1989.
>
> Goodman inflicted emotional and physical abuse throughout the relationship. He claimed to have been involved in organized crime and to have killed many times while in prison. He threatened to kill Christine and physically assaulted her when she attempted to leave. One time, he hit her face with a handgun and threatened to kill her parents, family, and friends as she watched. Another time, he threw their cat headfirst into a brick wall, stating that he could bash her head in the same way at any time. Goodman also came to the bank where Christine worked, threatened her, and forced her to cash checks. Christine eventually became afraid to speak at home and feared that Goodman would kill her.
>
> In September 1998, Christine called the police after Goodman threatened to kill her and her parents. Before the police arrived, Goodman hit her on her face, beat her with the telephone, and threatened to stab her. Christine obtained a protection order, and the State filed felony harassment and first degree assault charges. Christine continued to live at their home after her husband moved out. Released on $100,000 bail, Goodman returned to the home in December 1998 and burned it down "to keep [her] from living in the house with another guy." CP at 19. The fire killed Christine's dog, Jazz.
>
> Goodman pleaded guilty to first degree arson, residential burglary, violating a protection order, and killing a pet. He stated that he "did not know it was a crime to burn your own house." CP at 19. At sentencing, he admitted that he would "do it again." RP at 51 (March 17, 2000). The sentencing court found that Goodman knew that the dog was in the house when he set the fire and killed the dog to further harm his wife emotionally. The court imposed an exceptional sentence of 360 months after finding that Goodman has no respect for the law or life, engaged in an ongoing pattern of domestic abuse, and manifested deliberate cruelty or intimidation of the victim while committing the arson.

State v. Goodman, 108 Wn. App. 355, 357-358 (2001); review denied, 145 Wn. 2d 1036 (2002).

## PROCEDURAL HISTORY

Petitioner filed a direct appeal. (Dkt. # 32, Exhibit 2). His conviction and sentence were affirmed. State v. Goodman, 108 Wn. App. 355 (2001). Petitioner sought discretionary review and raised the following issues:

1. Mr. Goodman was deprived of his constitutional right to due process by the

REPORT AND RECOMMENDATION- 2

amended information's failure to state the essential elements of domestic violence for the charged offense of first degree arson – domestic violence, residential burglary – domestic violence, violation of a protection order – domestic violence, and willfully killing a pet animal – domestic violence.

2. The trial court erred by imposing an exceptional sentence of 360 months for Mr. Goodman's conviction of first degree arson.

3. The trial court's Finding of Fact II that the factors set forth by the prosecuting attorney are applicable and are aggravating factors is not supported by the record.

4. The trial court's Finding of Fact II that the defendant consistently referred to his being involved in organized crime throughout his and the victim's relationship is not supported by the evidence.

5. Mr. Goodman was denied effective assistance of counsel in pleading guilty as charged in the amended information with notice the State would seek an exceptional sentence under domestic violence aggravating factors.

(Dkt. # 32, Exhibit 4). Review of his direct appeal became final when the state supreme court denied discretionary review April 2, 2002. (Dkt. # 32, Exhibit 5). His conviction became final at this point in time.

Petitioner sought to withdraw his guilty plea in superior court and his motion was denied. (Dkt. # 32, Exhibit 7). Petitioner appealed and the state court of appeals affirmed the denial of the motion to withdraw the plea. (Dkt. # 32, Exhibit 10). Petitioner sought discretionary review and raised the following issues:

1. THE COURT OF APPEALS ERRED BY CONCLUDING THAT THE TRIAL COURT WAS NOT REQUIRED TO HOLD A HEARING ON GOODMAN'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE THE CLAIMS WERE EITHER REJECTED IN HIS DIRECT REVIEW OR LACKED MERIT; HOWEVER, NO COURT HAD YET CONSIDERED A MOTION TO WITHDRAW HIS GUILTY PLEA AND MANY OF HIS CLAIMS HAD NOT BEEN CONSIDERED BY ANY COURT.

2. THE COURT OF APPEALS ERRED IN CONCLUDING THAT DEFENSE COUNSEL'S ASSISTANCE DURING THE TRIAL PREPARATION, PLEA NEGOTIATIONS, AND SENTENCING HEARING DID NOT AMOUNT TO A COMPLETE DENIAL OF COUNSEL WHICH MADE THE INTEGRAL PROCESS OF THE SUPERIOR COURT PROCEEDINGS ITSELF PRESUMPTIVELY UNRELIABLE.

(Dkt. # 32, Exhibit 11). Review was denied March 29th, 2005. While the review on the motion to withdraw the plea was pending petitioner filed a personal restraint petition. (Dkt. # 32, Exhibit 14). The petition was dismissed. (Dkt. # 32, Exhibit 17). Petitioner sought discretionary review and

REPORT AND RECOMMENDATION- 3

raised the following issues:

> 1. The Court of Appeals erred by concluding that <u>Blakely v. Washington</u>, ___ U.S. __, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) does not apply to Goodman's case. Goodman's case was not yet final at the time <u>Apprendi</u>, <u>Gore</u>, and <u>Blakely</u> were decided, and must, therefore receive application of this newly announced rule of law.
>
> When determining application of a newly articulated principal of law; following the state and federal guiding principals reiterated in <u>State v. Evans</u>, 114 P.3d 627 (2005), if not "pending on direct review," in what instances would the "or not yet final" mandate retroactive application?
>
> 2. The Court of Appeals dismissal of Goodman's Personal Restraint Petition as untimely, premised upon a mandate that was issued by the Court on April 10, 2002, and RCW 10.73.090 (one year time limit), is clearly erroneous as evidenced by the Court's next sentence (Slip Op., pg. 1) referring to Goodman's second appeal and the mandate issued therein on May 12, 2005. This 5/12/05 mandate issued on an action that was commenced on January 9, 2001 in conjunction with Goodman's direct appeal. RCW 10.73.090 had not yet been triggered.
>
> If Goodman had only challenged his judgment and sentence via CrR 7.8 (as is the most common method to seek withdrawal of a guilty plea); and accordingly, this "being a collateral attack . . . and thus irrelevant in determining the finality of his judgment and sentence" (Slip Op., pg. 2), would he then be precluded from the benefit of all newly articulated principals of law because he chose one method of review rather than, or in addition too, another?
>
> 3. This retroactivity issue is moot because the Washington State Legislature has directed that certain claims must be considered regardless of finality of judgment. This legislation precludes the court from imposing additional limitations based on <u>Teague</u>. RCW 10.73.100 provides the exceptions to the one-year time limit imposed by RCW 10.73.090. At least four exceptions delineated in RCW 10.73.100 apply to Goodman's sentence.
>
> Can the judiciary ignore or re-write the law when the controlling statute expresses a clear legislative intent contrary to the judiciary's decision? RCW 10.73.100(2), (4), (5), and (6).

(Dkt. # 32, Exhibit 18). The state supreme court denied review October 7th, 2005. (Dkt. # 32, Exhibit 19).

The petition now before this court was filed in April of 2005 and stayed pending a ruling by the state courts on the <u>Blakely</u> issues. (Dkt. # 16). Petitioner presents the court with the following grounds for relief:

> <u>Ground One</u>: The trial court deprived Mr. Goodman of his constitutional right to due process by the amended charging information's failure to state the essential elements of domestic violence for the charged offense of first degree arson – domestic violence, residential burglary – domestic violence, violation of a protection order – domestic violence, and willfully killing a pet – domestic violence.

REPORT AND RECOMMENDATION- 4

> <u>Ground Two</u>: The trial court erred by imposing an exceptional sentence of 360 months for Mr. Goodman's conviction of first degree arson. Goodman plead[ed] guilty and his sentencing guidelines were 31-41 months.
>
> <u>Ground Three</u>: The trial court's finding of fact II (1) that the factors set forth by the prosecuting attorney are applicable and are aggravating factors is not supported by the evidence.
>
> <u>Ground Four</u>: The trial court's finding of fact II (2)(1) that the defendant consistently referred to his being involved in organized crime throughout his and the victim's relationship is not supported by the record.
>
> <u>Ground Five</u>: Goodman was denied his right to effective assistance of counsel during the pleading stage of his case in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 3, 21, and 22 of the Washington State Constitution.
>
> <u>Ground Six</u>: The trial court erred by denying Goodman's CrR 7.8 Motion to Withdraw Guilty Plea based on the law of the case, when no court had considered such a motion; thereby depriving him of due process of law in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 3, 22, and 29 of the Washington State Constitution.
>
> <u>Ground Seven</u>: The court of appeals erred by concluding that the trial court was not required to hold a hearing on Goodman's claims of ineffective assistance of counsel because the claims were either rejected in his direct review or lacked merit; however, no court had yet considered a motion to withdraw his guilty plea and many of his claims had not yet been considered by any court; thereby depriving him of due process of law in violation of the Fifth, Sixth, and Fourteenth Amendments to the Untied States Constitution and Article I, Sections 2, 3, 2[2] and 29 of the Washington State Constitution.
>
> <u>Ground Eight</u>: the court of appeals erred in concluding that defense counsel's assistance during the trial preparation, plea negotiations, and sentencing hearing did not amount to complete denial of counsel, which made the integral process of the superior court proceeding itself presumptively unreliable; thereby depriving Goodman of due process of law in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 3, 22 and 29 of the Washington State Constitution.
>
> <u>Ground Nine</u>: Goodman was denied his Sixth Amendment right to a trial by jury because the sentencing procedure, as applied to him by the trial Judge, deprived Goodman of his Federal Constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence and therefore, is in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 3, 21, 22, 29 and 30 of the Washington State Constitution.

(Dkt. # 8). Petitioner was allowed to amend the petition to raise one additional ground:

> <u>Ground Ten</u>: Whether the exceptional sentence imposed by the superior court is unconstitutional under the Supreme Court's decisions in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000); <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004).

REPORT AND RECOMMENDATION- 5

(Dkt. # 29).

## EVIDENTIARY HEARING

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996). Petitioner's claims rely on established rules of constitutional law. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary hearing.

## STANDARD

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. Engle v. Isaac, 456 U.S. 107 (1983). 28 U.S.C. § 2254 is explicit in that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a)(1995). The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law. Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991).

Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). A determination of a factual issue by a state court shall be presumed correct, and the applicant has the

REPORT AND RECOMMENDATION- 6

burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

DISCUSSION

A. Exhaustion of State Remedies.

In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly presented to the state's highest court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985). Petitioner did not present his second, third, or fourth grounds to the Washington State Supreme Court as federal claims. The grounds were presented as errors of state law on direct appeal. (Dkt. # 32, Exhibit 4).

Normally, a federal court faced with an unexhausted or mixed petition dismisses the petition without prejudice, so that the petitioner has an opportunity to exhaust the claims in state court. Here, however, petitioner is barred from filing in state court as any attempt to file another petition will be deemed successive and time barred. See, RCW 10.73.090 and 10.73.140

Federal Courts generally honor state procedural bars unless it would result in a "fundamental miscarriage of justice" or petitioner demonstrates cause and prejudice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Petitioner here cannot show cause and prejudice in state court.

To show cause in federal court, petitioner must show that some objective factor external to the defense prevented petitioner from complying with state procedural rules relating to the presentation of his claims. McCleskey v. Zant, 499 U.S. 467, 493-94 (1991). Here, petitioner has filed multiple challenges and the time allowed for such filings has simply expired. Petitioner cannot show cause that excuses his procedural default in state court. Thus, claims two, three and four are procedurally barred and present only issues of state law.

B. On the merits.

1. The information.

Petitioner's first claim is that the information was constitutionally infirm. (Dkt. # 8). The state court of appeals considered this issue and stated:

Goodman first argues that the charging information was insufficient for failing to state

REPORT AND RECOMMENDATION- 7

> the "elements" of the domestic violence definition in RCW 10.99.020(3). Goodman argues that, because his information characterized each alleged crime as "a domestic violence incident," the information was insufficient absent a statement of the elements of domestic violence. CP at 6-8. A sufficient information states the essential elements of each charged crime so that the accused may understand the charges and prepare a defense. U.S. Const. amend. IV; Wash. Const. art. I, § 22; *State v. Johnson*, 119 Wn. 2d 143, 147, 829 P.2d 1078 (1992).
>
> Goodman argues that RCW 10.99.020(3), which defines "domestic violence" and other related terms, provides the "elements" of domestic violence. The definition provides a nonexclusive list of crimes that are domestic violence crimes "when committed by one family or household member against another." RCW 10.99.020(3). But the legislature specifically stated that the purpose of the Domestic Violence Act, Chapter 10.99, was not to establish new crimes, finding that "the existing criminal statutes are adequate to provide protection for victims of domestic violence." RCW 10.99.010. Thus, the Act "created no new crimes but rather emphasized the need to enforce existing criminal statutes in an evenhanded manner to protect the victim regardless of whether the victim was involved in a relationship with the aggressor." *Roy v City of Everett*, 118 Wn.2d 352, 358, 823 P.2d 1984 (1992); *see also* RCW 10.99.010.
>
> We hold that the charging information here was sufficient because domestic violence is not a separate crime with elements the State must prove. Identifying a crime as a domestic violence crime "does not itself alter the elements of the underlying offense; rather, it signals the court that the law is to be equitably and vigorously enforced." *State v. O.P.*, 103 Wn App. 889, 892, 13 P.3d 1111 (2000). Thus, Goodman's information was not insufficient for failing to state the "elements" of domestic violence.

(Dkt. # 32, Exhibit 4, pages 3 and 4).

A state defines it's own crimes. The court of appeals decision is not contrary to or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Nor is the state court ruling an unreasonable determination of the facts in light of the evidence presented to the state courts. Petitioner argues the information was constitutionally infirm because the elements of domestic violence were not set forth. The argument fails as domestic violence is not a crime in and of itself.

2. <u>Effective assistance of counsel</u>.

In grounds five and eight petitioner argues his counsel was ineffective. In order to establish ineffective assistance of counsel, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficient performance affected the result of the proceeding. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984). There is a strong presumption that

REPORT AND RECOMMENDATION- 8

counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. In order to demonstrate prejudice, the defendant must show there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different. Strickland, 466 U.S. at 694.

Under the first prong of the Strickland test, the question is whether counsel's assistance was reasonable under the totality of the circumstances, viewed as of the time of counsel's conduct. Strickland, 466 U.S. at 690. To succeed under the first prong, the petitioner must show the attorney's conduct reflects a failure to exercise the skill, judgment, or diligence of a reasonably competent attorney. United States v. Vincent, 758 F.2d 379, 381 (9th Cir.), cert. denied, 474 U.S. 838 (1985).

Under the second prong, the petitioner must demonstrate prejudice, that but for counsel's unprofessional errors, the result would have been different. Strickland, 566 U.S. at 694. However, sheer outcome determination is not sufficient to make out a Sixth Amendment violation; a proper prejudice inquiry focuses on whether counsel's errors or omissions rendered the proceeding fundamentally unfair or the result unreliable. Lockhart v. Fretwell, 113 S.C. 838, 842-44 (1993).

Further, to obtain relief in federal court petitioner must show the state court ruling to be an unreasonable application of clearly established federal law, as determined by the Supreme Court; or a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.

The state court of appeals considered petitioners claim of ineffective assistance of counsel on direct appeal and on collateral review. (Dkt. # 32, Exhibits 10 and 21). On direct appeal the court stated:

> Goodman argues finally that his counsel was ineffective. Effective assistance of counsel helps guarantee a fair and impartial trial. U.S. Const. amend. VI; Wash. Const. art. I, § 22; State v. Thomas, 109 Wn.2d 222, 225, 743 P.2d 816 (1987). Goodman must show his counsel's deficient performance and the resulting prejudice. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. McFarland, 127 Wn3d 322, 334-35, 899 P.2d 1251 (1995).
>
> Prejudice resulted where it is reasonably probable that, "but for counsel's unprofessional errors, the result of the proceedings would have been different." State

REPORT AND RECOMMENDATION- 9

> v. Lord, 117 Wn.2d 829, 883-84, 822 P.2d 177 (1991) (quoting Strickland, 466 U.S. at 694). Absent prejudice, we need not review counsel's performance. Lord, 117 Wn.2d at 884. And we presume that counsel was effective. McFarland, 127 Wn.2d at 335. Conduct that may be characterized as legitimate trial strategy does not support an ineffective assistance claim. State v. Day, 51 Wn. App. 544, 553, 754 P.2d 1021 (1988).
>
> Goodman first argues that his counsel was ineffective for failing to inform him that an exceptional sentence was likely before he pleaded guilty. But Goodman's defense counsel stated to the trial court that he had informed Goodman that the prosecutor was seeking an exceptional sentence. Moreover, Goodman's signed guilty plea acknowledged his "full knowledge and understanding that the State will be seeking an exceptional sentence above the standard range." CP at 23. On this record, Goodman cannot complain that his counsel deprived him of his right to make an informed and voluntary decision to plead guilty.
>
> Goodman also alleges that his counsel also prevented him from testifying at the sentencing hearing, failed to present any evidence or call witnesses on his behalf, marked exhibits but never offered them, and failed to provide any written memorandum of law to the trial court. But the record reflects that Goodman testified at length about his relationship with his wife. And defense counsel argued vigorously in favor of a standard range sentence. Further, although there is no brief in the record, the transcript reflects that defense counsel submitted a brief to the court. Finally, Goodman points to no specific evidence or witnesses that his counsel could have presented in support of a shorter sentence. And given Goodman's guilty plea and his statement to the trial court that he would "do it again," such efforts would likely have been futile. RP at 51 (March 17, 2000).

(Dkt. # 32, Exhibit 21, pages 10 to12). The plea agreement signed by petitioner directly contradicts his argument. On collateral review the state court stated:

> We rejected Goodman's claim that his counsel was ineffective for failing to inform him that an exceptional sentence was likely in our decision on his direct appeal. Goodman's argument here is closely related: counsel told him the maximum possible sentence was 65 months. The record directly contradicts his argument. Goodman's signed guilty plea stated that the maximum sentence was life in prison. Moreover, the State gave Goodman notice at the time of the guilty plea that it would seek an exceptional sentence of 360 months.
>
> Goodman next argues he should be allowed to withdraw his guilty plea because he did not know his prior incidents of domestic violence would be a factor in determining his sentence. But appendix C of Goodman's guilty plea notified him the State would be seeking an exceptional sentence based in part on former RCW 9.94A.390(2)(h)(i) (1999). [footnote omitted] Under former RCW 9.94A.390(2)(h)(i), a current offense that involved domestic violence and which "was part of an ongoing pattern of psychological, physical, or sexual abuse of the victim manifested by multiple incidents over a prolonged period of time" was an aggravating circumstance. Because Goodman was on notice that his history of domestic violence might be a factor in determining his exceptional sentence, the trial court did not abuse its discretion when it denied his motion to withdraw his guilty plea.
>
> Goodman's claim that his counsel was ineffective for failing to call witnesses

REPORT AND RECOMMENDATION- 10

at sentencing and preventing him from testifying also fails. We rejected these arguments in his direct appeal. Goodman testified at length during his sentencing hearing. And as in his direct appeal, he does not identify any specific witnesses that his counsel could have called, except for bare assertions that his attorney knew he was a car dealer and owned a car lot.

Goodman argues that he should be allowed to withdraw his guilty plea because his attorney insisted that he tell the sentencing court he would burn down his house again. Goodman's bare allegation, without more, does not give rise to new facts sufficient to permit withdrawal of his guilty plea. See CrR 7.8; Brune, 45 Wn. App. at 363.

To the extent that Goodman's claims raise it, we reject the argument that his plea was not knowing, voluntary, and intelligent. His guilty plea informed him of the charges, their direct consequences, and the constitutional and other rights he gave up by pleading guilty. His responses at the plea hearing also give every indication that the pleas were knowing, voluntary and intelligent.

(Dkt. # 32, Exhibit 10, at 3-6). The court has also considered the verbatim report of proceedings. (Dkt. # 32, Exhibit 22). The record reflects petitioner was fully informed that the state was seeking an exceptional sentence, the plea agreement itself indicated part of the basis for that request was domestic violence. Petitioner fails to show counsel's performance was deficient and the state court rulings were not an unreasonable application of clearly established federal law, as determined by the Supreme Court. Nor were the state court rulings an unreasonable determination of the facts in light of the evidence presented to the state courts. Petitioner has failed to come forward with any evidence to show counsel's performance was ineffective. Claims five and eight are without merit.

3. Collateral proceedings.

Petitioner attempts to challenge the state courts decision to deny his motion to withdraw the guilty plea and the state court of appeals' decision affirming that ruling. (Dkt. # 8, grounds six and seven). As respondent notes "[F]ederal habeas relief is not available to redress alleged procedural errors in collateral state post-conviction proceedings." Ortiz v. Stewart, 149 F.3d 923 (9th Cir. 1998). (Dkt. # 31, page 18). Grounds six sand seven cannot form the bases for relief in habeas corpus.

4. Apprendi and Blakely.

Petitioner argues the rulings in Apprendi and Blakely apply to him. (Dkt. # 8, ground nine

REPORT AND RECOMMENDATION- 11

and amendment to petition, Dkt. # 24, ground ten): <u>Apprendi v New Jersey</u>, 530 U. S. 466 (2000); <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).  In <u>Apprendi</u> the court held other than prior convictions, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury.  In <u>Blakely</u> the court held that sentencing a person who pled guilty to an exceptional sentence based the sentencing judge finding the defendant acted with deliberate cruelty violated the defendants right to trial by jury where the defendant had not stipulated to the facts.  This holding redefined the term "statutory maximum."

When <u>Apprendi</u> was decided the term statutory maximum was generally thought to mean the longest sentence allowed by law, not the highest end of a sentencing range.  Thus, in 2002 when petitioner's sentence and conviction became final the sentence did not violate the holding of <u>Apprendi</u>.  The maximum sentence in Goodman's case was life and Goodman signed a guilty plea indicating he knew the maximum sentence was life.  (Dkt. # 32, Exhibit 10, pages 4 and 5).

<u>Blakely</u> was decided in 2004, nearly two years after petitioners sentence became final. <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).  <u>Blakely</u> clarified the concept of statutory maximum and held the maximum is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, not the maximum sentence after the judge finds additional facts.  Petitioner would be entitle to relief if the <u>Blakely</u> decision applied retroactively.

The respondent correctly notes that <u>Blakely</u> does not apply to cases on collateral review prior to the date of <u>Blakely</u> decision, June 24th, 2004.  <u>Schardt v. Payne</u>, 414 F.3d 1025, 1033-1038 (9th Cir. 2005).  As <u>Blakely</u> does not apply retroactively, this petition is without merit.

CONCLUSION

Based on the foregoing discussion, the Court should **DISMISS** the petition **WITH PREJUDICE.**  A proposed order accompanies this report and recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of

REPORT AND RECOMMENDATION- 12

appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **April 28th, 2006** as noted in the caption.

DATED this 28th day of March, 2006.

/s/ Karen L. Strombom
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION- 13